UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KENNETH R. REYNOLDS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JENNIFER SHURE; BENJAMIN SHURE; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation; BRANDON DOE, an individual and employee of State Farm Mutual Automobile Insurance Company, an Illinois corporation; and DOES 1 to 100, inclusive,<br><br>　　　　　Defendants. | CIV. NO. 2:15-02110 WBS EFB<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS</u> |

----oo0oo----

　　　　Plaintiff Kenneth R. Reynolds filed this action in state court against defendants Jennifer Shure, Benjamin Shure, State Farm Mutual Automobile Insurance Company ("State Farm"), and Brandon Doe arising from a dispute over coverage under defendants Jennifer and Benjamin Shure's insurance policy. Defendants removed the action to this court pursuant to 28 U.S.C.

1

§ 1441(b).  Defendant State Farm now moves to dismiss plaintiff's claims for intentional infliction of emotional distress, trespass and conversion, punitive damages, and negligence for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 7.)

I.    Factual and Procedural History

On July 28, 2015, plaintiff's daughter, Madelaine Reynolds, was driving plaintiff's vehicle and was in an automobile accident with defendants Jennifer and Benjamin Shure. (Compl. ¶¶ 10, 25 (Docket No. 1-1).)  The Shures attempted to move into the left lane on Interstate 5 around Los Angeles, California, crashing into and causing significant damage to plaintiff's vehicle, a 2005 Infiniti FX35.  (Id. ¶¶ 23-24.)  The Shures and their vehicle are insured by State Farm.  (Id. ¶ 6.)

In response to the accident, State Farm opened claim number 04-6V62-083 and began an investigation.  (Id.)  Plaintiff contacted State Farm twice in early August about finalizing their investigation and repairing his car.  (Id. ¶ 23.)  On August 7, 2015, plaintiff called State Farm and was connected with State Farm employee Brandon Doe.  (Id. ¶ 25.)  He informed Brandon Doe that he was an attorney and would be representing his daughter, Madelaine Reynolds, and that he "would not permit" State Farm "to take a statement from Madeleine Reynolds."  (Id.)  Despite his instructions, State Farm called Madeleine that same day to take her statement and did not ask if she was represented by an attorney or inform her that her attorney had asked that she not be contacted.  (Id. ¶ 26.)  Plaintiff witnessed this phone call. (Pl.'s Opp'n at 8.)

On August 10, 2015, defendant Brandon Doe advised plaintiff that State Farm had a police report placing liability for the accident on plaintiff's daughter. (Id. ¶ 32.) The police were not called to the accident scene and, as a result, plaintiff alleges there either was no police report or the Shures fabricated a report after the accident. (Id.)

State Farm advised plaintiff on August 21, 2015 that the Shures had accepted liability for the accident and plaintiff's losses. (Id. ¶ 27.) State Farm informed plaintiff that it would mail a check for $5,615.33 that day for car repairs and additional payments would be made if further damages were discovered. (Id.) In reliance on this statement, plaintiff paid $2,716.33 to repair the electronic damage to his car. (Id. ¶ 28.)

On August 28, 2015, State Farm called plaintiff and informed him that it had changed its mind and issued a stop payment on the check sent to plaintiff. (Id. ¶ 29.) Plaintiff alleges he would not have undertaken the car repairs if he had known State Farm would decide not to pay. (Id. ¶ 30.)

In his Complaint, plaintiff asserts the following causes of action: (1) motor vehicle, personal injury, property damage, negligence by the Shures; (2) fraud and deceit; (3) infliction of emotional distress; (4) misrepresentation, concealment, false promises; (5) trespass and conversion; (6) punitive damages; and (7) negligence by State Farm. State Farm now moves to dismiss plaintiff's third, fifth, sixth, and seventh causes of action.

3

II. Discussion

On a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions . . . ." Twombly, 550 U.S. at 555 (alteration in original) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

A. Intentional Infliction of Emotional Distress

The elements of intentional infliction of emotional

4

distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Cervantez v. J. C. Penney Co., 24 Cal. 3d 579, 593 (1979).  Conduct is outrageous if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id.  The distress inflicted must be "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (4th Dist. 1970) (citation omitted).  The courts have jurisdiction in California "to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as . . . infliction of emotional distress." Moradi-Shalal v. Fireman's Fund Ins. Cos., 46 Cal. 3d 287, 304-05 (1988).

   Plaintiff alleges he suffered severe emotional distress of "anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame" due to State Farm's "outrageous" conduct.  (Compl. ¶¶ 37-38.)  He alleges that State Farm intended to cause him emotional distress and acted with reckless disregard to the probability that he would suffer emotional distress. (Id. ¶ 37.)  He claims that State Farm knew he was "particularly vulnerable to emotional distress," although he does not allege how he was particularly vulnerable or how State Farm knwe. (Id. ¶ 42.)  Plaintiff incorporates the prior paragraphs of his

5

Complaint but provides no further explanation of why State Farm's conduct was outrageous or his distress severe.  (Id. ¶ 35.)

In his opposition to State Farm's motion to dismiss, plaintiff explains that his emotional distress was caused by State Farm's 1) invading his attorney-client relationship with his daughter and 2) inducing him to incur debt by promising to pay him for repairs and then cancelling payment.  (Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 3-4 (Docket No. 12).)  He argues in his opposition that State Farm's behavior was particularly outrageous given the ethical obligation to avoid dealing with represented claimants directly without the consent of the attorney.  (Id. at 5.)  None of these facts are alleged in the Complaint.

Even if plaintiff had alleged that his basis for claiming emotional distress was interference with the attorney-client relationship and inducement by false promise, plaintiff still would have failed to allege how such behavior qualifies as outrageous conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Cervantez, 24 Cal. 3d at 593.  Plaintiff does not allege that defendant had the intent to later stop payment at the time it told him it would pay for the repairs to his vehicle--an act that could plausibly constitute outrageous behavior.  Instead, plaintiff simply alleges that defendant advised defendant that payment would be mailed and then seven days later "changed [its] mind about paying."  (Pl.'s Compl. ¶¶ 28-29.)  Thus, at root, plaintiff grounds his intentional infliction of emotional distress claim on State Farm's cancellation of payment and refusal to accept

6

1  responsibility for the damages incurred.
2          Disputes over the handling of insurance claims are not
3  generally considered outrageous conduct sufficient to support a
4  cause of action for intentional infliction of emotional distress.
5  Cf. Schlauch v. Hartford Accident & Indemnity Co., 146 Cal. App.
6  3d 926, 937 (3d Dist. 1983) ("The failure to accept an offer of
7  settlement or the violation of statutory duties under Insurance
8  Code section 790.03 does not in itself constitute the type of
9  outrageous conduct which will support a cause of action for
10 intentional infliction of emotional distress.").
11         Plaintiff's claim that State Farm acted outrageously by
12 invading his attorney-client relationship is also insufficiently
13 pled.  California Rule of Professional Conduct 2-100 provides
14 that a lawyer may not communicate directly with a party the
15 lawyer knows to be represented by another lawyer unless the
16 member has the consent of the other lawyer.  However, it is not
17 alleged that the person who contacted plaintiff's daughter was a
18 lawyer.  The court has found no comparable provision in the
19 California Insurance Code prohibiting insurance carriers from
20 communicating directly with persons represented by an attorney.
21         What plaintiff relies upon is something in the Model
22 Rules of Professional Conduct and the Statement of Principles
23 established in 1938 at the annual convention of the American Bar
24 Association ("ABA").  (Pl.'s Opp'n at 5.)  The Statement of
25 Principles is an agreement between the ABA Committee on the
26 Unauthorized Practice of Law, the Committee of Lay Adjusters of
27 the Insurance Section, and a special committee representing
28 insurance interests.  See 7-49 Appleman on Insurance Law &

1   Practice Archive § 49.23 (2nd ed. 2011) (Statement of Principles
2   § a-1: "The companies or their representatives will not deal
3   directly with any claimant represented by an attorney without the
4   consent of the attorney").  This agreement does not carry the
5   force of law.
6          Furthermore, any violation of this ethical rule harms
7   the represented client, not the attorney.[1]  Thus, even if breach
8   of this ethical duty constituted outrageous behavior, it would
9   provide the client, not the attorney, with grounds for an
10  emotional distress claim.  See, e.g., Harmatz v. Allstate Ins.
11  Co., 170 F. Supp. 511, 512 (SDNY 1959) (finding that the penalty
12  for violations of New York's version of California's rule against
13  unauthorized contact by an attorney with the represented adverse
14  party "is not a personal action for damages by the aggrieved
15  attorney").[2]  Madeleine, plaintiff's client and daughter, is not

---

[1] In a suit brought by an improperly contacted client under Rule 2-100, the remedy is generally disqualification of the offending attorney from further participation in the case or exclusion of improperly obtained evidence.  See Snider v. Superior Court, 113 Cal. App. 4th 1187, 1212 (4th Dist. 2003). "The court's goal is not to impose a penalty, as the propriety of punishment for violation of the Rules of Professional Conduct is a matter within the purview of the State Bar, not of a court presiding over the affected case.  Instead, what the court must do is focus on identifying an appropriate remedy for whatever improper effect the attorney's misconduct may have had in the case before it."  HTC Corp. v. Tech. Props. Ltd., 715 F. Supp. 2d 968, 973 (N.D. Cal. 2010).

[2] In Harmatz, the plaintiff was an attorney who was retained by the parents of an infant, Maria Natal, who was injured in an automobile accident involving a man insured by Allstate Insurance Company.  170 F. Supp. at 512.  Though Allstate knew plaintiff was representing Maria, it had a physician examine Maria without the knowledge or consent of plaintiff.  Id.  Plaintiff alleged that this interference with the attorney client relationship caused him "great mental pain, suffering, anguish, and anxiety."  Id.  The court held that

a party to this lawsuit.  Any emotional distress Madeleine may have suffered cannot form the basis for plaintiff's emotional distress claim.  Plaintiff does not have a derivative right of action based on his attorney-client or father-daughter relationship with Madeleine.

Lastly, plaintiff's statement that he suffered "anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame" is conclusory and insufficient.  Plaintiff does not provide any facts regarding his susceptibility to emotional distress, the duration of the distress, or the causal link between State Farm's behavior and his emotional state.  See Fletcher, 10 Cal. App. 3d at 397 ("[T]he intensity and duration of the distress are factors to be considered in determining its severity.").  It is simply not plausible from the facts alleged that plaintiff suffered distress "that no reasonable man in a civilized society should be expected to endure" from having incurred $2,000 worth of debt and experiencing a minor invasion of his attorney-client relationship with his daughter.  Id. at 397.  Accordingly, the court will grant State Farm's motion to dismiss plaintiff's emotional distress claim.

---

"annoyance at the violation by defendant of the rules governing the handling of lawsuits" is not a basis for the award of damages and plaintiff failed to allege "loss of his client, loss of the case, diminution of his fees or anything else that could be compensated for in damages."  Id.  "The complaint seeks to set up a contrived cause of action designed to let the lawyer cash in on the unethical conduct of an opponent with no allegation of compensable damages suffered by the lawyer."  Id. at 512-13.

B. Trespass and Conversion

Conversion is a "tort that protects against interference with possessory and ownership interests in personal property." Moore v. Regents of Univ. of Cal., 51 Cal. 3d 120, 134 (1990). To establish conversion, a "plaintiff must establish an actual interference with his ownership or right of possession. Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." Del E. Webb Corp. v. Structural Materials Co., 123 Cal. App. 3d 593, 610-611 (2d Dist. 1981).

To establish trespass, a plaintiff must be entitled to immediate possession of the property and be "deprived of the use of the chattel for a substantial time." Restatement (Second) of Torts § 219; see also Zaslow v. Kroenert, 29 Cal. 2d 541, 550 (1946) ("To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of his property.").

Plaintiff alleges that State Farm promised to mail $5,615.33 for repairs in August. (Compl. ¶ 57.) As a result, plaintiff argues, he then possessed, or had the right to possess, the funds promised. (Id. ¶ 57.) In issuing the stop payment on that check, plaintiff alleges State Farm intentionally interfered with plaintiff's use or possession of the money that he had a right to possess. (Id. ¶ 61.)[3]

---

[3] Plaintiff also alleges in his trespass/conversion cause of action that State Farm interfered with his attorney-client relationship with his daughter. The court does not see how this is relevant to a claim for trespass/conversion.

10

It must be remembered that plaintiff was not defendant's insured.  Thus, while plaintiff seems to have superficially alleged the elements of trespass/conversion, the court must dismiss this claim because an injured third party must have a judicial determination of fault before he has standing to sue the insurer of the party at fault.  Shaolian v. Safeco Ins., 71 Cal. App. 4th 268, 271 (1999) .  "As a general rule, a third party may directly sue an insurer only when there has been an assignment of rights by, or a final judgment against, the insured."  Id.; see also Cal. Ins. Code § 11580(b)(2) (providing that "[a] policy insuring against losses . . . shall not be issued or delivered to any person in this state unless" it contains a "provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment").

Plaintiff has not secured a final judgment, nor a binding settlement agreement, against the insured and, as a result, has not demonstrated that he has an ownership interest in or right to immediate possession of the proceeds of the Shures' insurance policy.  His allegation that the Shures caused the automobile accident and accepted liability for the accident is insufficient in California.  (Compl. ¶ 27.)  Accordingly, the court will grant State Farm's motion to dismiss plaintiff's conversion and trespass claims.

C. Punitive Damages

According to California Civil Code section 3294, a plaintiff may recover punitive damages in addition to actual damages in "an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." "There is no cause of action for punitive damages. Punitive or exemplary damages are remedies available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294." Hilliard v. A. H. Robins Co., 148 Cal. App. 3d 374, 391 (2d Dist. 1983) (citation omitted).

In his Complaint, plaintiff alleges a separate cause of action for punitive damages based on State Farm's malice, oppression, and fraud. (Compl. ¶ 63.) However, in his opposition plaintiff acknowledges that punitive damages are not a separate cause of action and requests that he be permitted to pursue punitive damages as a remedy. (Pl.'s Opp'n at 6.) Likewise, State Farm states in its reply that it "does not challenge the inclusion of punitive damages in the prayer, just as a stand-alone cause of action." (Def.'s Reply at 5.) Accordingly, the court will dismiss the punitive action claim as a cause of action but permit plaintiff to seek punitive damages as a remedy.

D. Negligence

"The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." Adelman v. Assoc. Interns. Ins. Co., 90

12

1 | Cal. App. 4th 352, 361 (3d Dist. 2001).  Plaintiff's threadbare
2 | negligence claim alleges that State Farm "was negligent as
3 | described earlier in this complaint; Plaintiff was harmed; and
4 | State Farm, Brandon Doe, and Does 1 through 50'[s] negligence was
5 | a substantial factor in causing Plaintiff's harm."  (Compl. ¶
6 | 68.)  Further, plaintiff alleges State Farm "failed to use
7 | reasonable care to prevent harm to Plaintiff."  (Id. ¶ 69.)
8 |      Plaintiff failed to allege that State Farm owes a duty
9 | of care to him, a third-party claimant who is not insured under
10 | the operative State Farm policy.  In his opposition plaintiff re-
11 | characterizes this cause of action as one for negligent
12 | infliction of emotion distress. (Pl.'s Opp'n at 7.)  He argues
13 | that he is both a direct and indirect victim of State Farm's
14 | invasion of the attorney-client relationship--which caused injury
15 | both to his daughter and himself. (Id.)  Even if State Farm did
16 | breach the agreement between the ABA and insurance committees by
17 | contacting a represented client directly without plaintiff's
18 | permission, plaintiff has failed to demonstrate that State Farm's
19 | duty of care extends to plaintiff.  More importantly, the
20 | negligent infliction of emotional distress claim is entirely
21 | absent from plaintiff's Complaint. Accordingly, the court grants
22 | State Farm's motion to dismiss plaintiff's negligence claim.
23 |      IT IS THEREFORE ORDERED that State Farm's motion to
24 | dismiss plaintiff's third, fifth, sixth, and seventh causes of
25 | action (Docket No. 7) be, and the same hereby is, GRANTED.
26 |      Plaintiff has twenty days from the date this Order is
27 | signed to file a First Amended Complaint, if it can do so
28 | consistent with this Order.

Dated: December 2, 2015

/s/ William B. Shubb

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

Dated: December 2, 2015